Uribe Jimenez, 18-142. Good morning, and may it please the Court. Jennifer Coapas from Arnold and Porter for Mr. Salvador Uribe Jimenez. The district court erred in denying Mr. Jimenez's motion to withdraw his guilty plea, which was involuntarily entered. The district court's error was twofold. First, the court made factual findings that were contrary to the record. Specifically, the court found that Mr. Jimenez had consented to the adjournment of his original June 2016 trial date. But that finding was directly contradicted by e-mails that Mr. Jimenez had submitted to the court, in which Mr. Jimenez unequivocally directed defense counsel not to delay his trial date. The district court did not address those e-mails in denying Mr. Jimenez's motion. And that error was critical because it was defense counsel's adjournment of the trial date that was the first in the chain of events that ultimately culminated in Mr. Jimenez's plea. And that brings us to the Court's second error, the Court's failure to consider the totality of the circumstances surrounding the plea and their impact on Mr. Jimenez. The Court did not address the May 26th conference where the August trial date was set at Mr. Jimenez's request and over defense counsel's objections because of his concerns about his ability to be prepared by the August trial date. The Court didn't address the fact that following that conference, defense counsel was away on vacation for nearly the entire month before trial. And the Court didn't address the significance of defense counsel's statements on Mr. Jimenez upon his return at the July 22nd and 29th conferences. And finally, the Court did not address the nature of the plea itself, a plea to all counts as charged without a plea agreement on the eve of trial after Mr. Jimenez had advocated for a trial. And it's unusual? You think that's unusual, a plea to all counts on the eve of trial? In these circumstances, yes, Your Honor. Why? Well, we know from the record that a plea agreement had been offered just shortly before trial. That happens all the time. People turn down plea agreements and then they get right up to the precipice of trial and then they say, wow, I don't want to go to trial and there's no more offer and you plead, you eat the sheet, as they used to say. Why do you think that that's unusual? It's unusual in the context of all the surrounding facts here. In many cases, defendants consistently seek delay of their trial date through the course of the proceedings. Here, from the very first moment Mr. Jimenez was in court, he sought his speedy trial. He advocated for it even against his own attorney. So the fact that the plea was entered without a plea agreement on the eve of trial and an abrupt reversal of the court's decision to do so would support an inference that it was not voluntary? Under the circumstances viewed as a whole, yes. Contrary to his own statements on the record under oath that it was voluntary and that he was satisfied with counsel. Yes, Your Honor. Rule 11d exists for these circumstances in which even though statements were made under oath during a plea allocution, the surrounding circumstances demonstrate that the plea was involuntarily entered. Or at least it should not have accepted this plea. The judge should have said at the time, wow, you know, this is just the timing is such that I'm not going to accept it, we're going to trial. That's what he should have said. Well, the challenge here, Your Honor, is to the judge's denial of the motion to withdraw his guilty plea. I understand that, but you're saying that it was clear from the context of the guilty plea, at the time of the guilty plea, that this was not, that this was not voluntary. Well, our argument, Your Honor, is that if you looked at all of the circumstances leading up to that plea, it would be clear that it was involuntary. And at the very least, at the time that Mr. Jimenez moved to withdraw his plea and the court was presented with all of the surrounding circumstances, it was error for the court to deny that motion. So to turn first to the court's erroneous factual finding, the court found that Mr. Jimenez ---- Does your argument depend on convincing us that the plea was involuntary? The argument turns on a finding either that the plea was involuntary or that at least there are significant questions as to the voluntariness of the plea, which is the circuit standard. And the finding that there's a fair and just reason to allow Mr. Jimenez to withdraw his plea here. So you're focused more on the significant questions issue? Yes. Given the what preceded the guilty plea? Yes. Our position is that Mr. Jimenez's plea was involuntary. But under this Court's standard, there just need to be significant questions as to his voluntariness to allow withdrawal. And that standard we maintain is met here as well. With respect to the erroneous factual finding of the judge's conclusion discrediting Mr. Jimenez's claim that his trial date had been adjourned, that finding was contradicted by the e-mails from April 28th and April 29th. In denying Mr. Jimenez's motion, the district court found that Mr. Jimenez's claim was expressly refuted by defense counsel's statements at the April 29th conference, in which defense counsel adjourned the trial date and excluded time, supposedly, with his client's consent. But the e-mails from April 28th and April 29th, Mr. Jimenez had expressly defect to the instructed defense counsel not to delay his trial date anymore, both immediately before and immediately after the conference. But at a certain point, he said, okay, is that right? I mean, he said, the August 8th, that my counsel has assured me that he'll be ready, understanding that there's going to be a little vacation just before that, okay. Well, that's a different moment in time, but I'll address that just a little bit. I'm accelerating this. Yeah. At the May 26th conference, at the very end of the conference, when the magistrate judge said that, my understanding is, defense counsel said he'd be prepared, defense counsel affirms that, yes, Mr. Jimenez says okay. But you need to look at that entire conference in context. The first entire half of that conference was spent debating when the trial date should be. And defense counsel repeatedly stated that he wanted a later trial date, even if it was over his client's objection. And he expressed concerns about his ability to be prepared. He said, if we, if Mr. Jimenez wants trial in August, I'll be ready in September. So because of those representations in the first half of the conference, Mr. Jimenez had valid concerns about defense counsel's ability to be prepared in time. He was also assigned a second counsel, is that right? Yes. He was assigned a second counsel a week before trial and two days before his guilty plea. And so he had the benefit of two lawyers at his guilty plea, or before his guilty plea? Yes. At his guilty plea, there were two lawyers, one of which was assigned two days before. But the assignment of that attorney only — well, the request for assignment of that attorney only confirmed Mr. Jimenez's fears that defense counsel was not prepared. At that point, it was a week before trial. And defense counsel had previously been asking to have the trial date adjourned, had not worked on his case since he had returned from his vacation, at least as of the July 22nd conference. And so in that moment, the request for additional counsel just confirmed Mr. Jimenez's concerns that defense counsel was not going to be prepared to offer effective assistance at trial. And yet he never said that at the guilty plea hearing. At the guilty plea itself, he did not. Mr. Jimenez's position was from the position here today, is that from everything that had led up to that moment, including the fact that he'd been requesting the trial date, he finally had it set, the Court said the trial date sticks, and he believed right on the eve of trial defense counsel was not prepared, that he felt in that moment that there was no choice but to enter the guilty plea. And it was necessary for him to say under oath, subject to the penalties of perjury, that he was satisfied with his lawyer's performance. In that moment, he felt like he was trapped between going to trial without an attorney who was prepared to represent him and entering the plea. And so, yes, in that moment, he chose to enter the plea. So you're saying he committed perjury when he said that? What we're – our position is that those statements – Here's the question. Mr. Jimenez, are you satisfied with Mr. Gregory and Mr. Meydel as your counsel? The defendant, yes, Your Honor. And our position is that those statements were not voluntarily made looking at the surrounding circumstances that led up to that moment. Involuntary perjury. Okay. Thank you, Your Honor. And you've reserved some time for rebuttal. Good morning, Your Honors. My name is Craig Heron. I represent the United States in this matter. And may it please the Court, Judge Deery did not commit any abuse of discretion when it denied the defendant's motion to withdraw his guilty plea. The defendant has identified no mistake of law, nor any clearly erroneous application of the facts in this case. The Court conducted a searching review of the record, as he identified in his – in the hearing where he issued his order denying the motion to withdraw. He specifically noted this review and, more importantly, noted the thoroughness of the plea colloquy at which the defendant clearly and unambiguously stated that he was satisfied with counsel and also the litany of questions related to his voluntariness and preparedness to plead guilty. He specifically considered this claim raised today about counsel and the defendant's concern that counsel was not going to be prepared at trial and rejected it, based on the record in place. And this is consistent, I think, not only with the record, but consistent with this circuit's case law. In several other cases cited in our brief, the circuit and district court have all concluded that claims of pressure or the feeling of – that they would be unprepared, defense counsel would be unprepared for trial, was belied by the plea colloquy that was made under oath, and that the – Alito, are you – are you – you are not suggesting that there is no circumstance or situation pursuant to which the circumstances preceding a guilty plea might really cast doubt on the voluntariness of the plea? I am not saying that, Your Honor. Notwithstanding the allocution. I'm not saying that, Your Honor. Okay. There are some cases in which counsel beforehand tells the defendant that you should just say yes to every question. There's no suggestion of that here. No, Your Honor, there's not. The record here is quite to the contrary. I think what's important about this record is this is a record where the defendant showed a demonstrated ability to speak up when necessary. This was an intelligent individual who spoke English well and who, beginning as early as I believe it was his first or second appearance before Judge Deery, demonstrated an ability to request new counsel when he was dissatisfied with it. Advocate for himself. Yes, Your Honor. He did so at that January conference. At the March 11th conference, he spoke out, going so far as I believe to cut off his attorney, his second attorney, and saying, I believe he said, no, no, no, I got something to say here. As Judge Deery put it, the defendant was no shrinking violet. He further demonstrated his ability to speak in May 23rd when he filed his letter, and the court was responsive to that request and had a status three days later before Magistrate Judge Polorowski where his concerns appeared to have been addressed. At that appearance, the defendant received an earlier trial date than the one that Judge Deery had scheduled and had agreed to keep the counsel that he had. Although, and I think this is important, Judge Polorowski made it very clear that he had the opportunity to still go before Judge Deery and ask for a new counsel if he still wanted it with the admonition and caution that changing counsel yet again could create the tension of an attorney requesting a delay, which was inconsistent with his desires. And what happened after that is that over the course of the next two months and three status conferences, the defendant said not a word again to Judge Deery about concerns for counsel, said not a word about it on August 3rd when he pled guilty and when the court inquired of him, and only raised it several months later after a breakdown in negotiations for a potential Rule 35 reduction of sentence. And so I think based on the totality of the record here, the record shows that the When you couple that with the other aspects of the standard for withdrawal here, there's been no claim of legal innocence here. As I noted, a significant time has elapsed, and as the court, as the government explained in its briefing, there would have been substantial prejudice to the government in light of the international nature of this trial. Witnesses from Ecuador who might not have been available, as well as a cooperating witness who had left the country and was no longer available to the government. So for all those reasons and more, the government, the court's decision was non-abusive discretion. Unless the, your honors have any questions, I will rest on my brief. Thank you. Your honors, Rule 11d exists for a reason here. It allows pleas to be withdrawn when there's a fair and just reason to do so, despite the plea allocution and despite the witness's statements under oath. It's been done before here by this Court in Johnson, and it's what we're asking this Court to do here again today, based on this record before it in Mr. Jimenez's case. To respond to a few of the government's points, the government did not address, first and foremost, here in its briefing, the fact that Judge Geary made an erroneous factual finding and that that infected the remainder of the Court's analysis. That, again, relates to Mr. Jimenez's supposed consent to adjournment of the trial date. And while the government makes much of Mr. Jimenez's purported ---- Well, May 26th, he says okay. He says okay at the very end of the May 26th conference. But what happens from there is really significant, Your Honor. The next conference on June 28th, the defense counsel represents that he has received the government's discovery that he's reviewing a plea agreement, and three days later, he goes away on vacation. He's gone for a month. He comes back to court the next time on the 22nd and says, Judge, I haven't met with my client. Judge, I haven't worked on this case. I was working on other things. At this point, we're two weeks away from trial. And he's ---- You are not, by the way, making an ineffective assistance of counsel claim in connection with the plea. No, we're not here. Our argument is the impact of these events on Mr. Jimenez. So this is what he's seeing his attorney saying and doing in the weeks before his trial. And at that point, defense counsel even suggested, let's not cement ourselves in that trial date. But the Court said the trial date sticks. When they're back a week later, just now about a week before trial, this time defense counsel is there asking for somebody else to help them try the case that's now a week away. And these ---- We pay very little attention to the government's arguments about the prejudice to it. In the 10 months after the defendant ---- the 10 months that the defendant took to change his mind, the government's position substantially deteriorated as to its ability to prove the trial. That's a very substantial ---- that's a very important factor in this decision. I mean, absent your ability to show that the plea really should not have been accepted by the trial judge as a voluntary plea on which you fall substantially short, what about the prejudice to the government? That's a very important consideration. Well, under the fair and just interest standard, the district court could take prejudice into account. Here, Judge Deery didn't make any findings on that point as to the government's claims of prejudice. With respect to the amount of time for Mr. Jimenez to withdraw his plea, that's explained by the record. It's explained that there had been these negotiations with defense counsel and that after that broke down, Mr. Jimenez requested new counsel specifically to address these issues because of a breakdown in their relationship. And then replacement counsel had to be appointed in order to actually get caught up on the record and make the motion. With respect to the government's claims of prejudice, yes, they have claimed that one of their witnesses may be unavailable and that it may be burdensome to bring others back for trial. But that being said, there is an overwhelming interest in making sure that guilty pleas are knowingly and voluntarily entered. Here, Mr. Jimenez is 54 years old and facing a 20-year sentence, and the law requires that this court be assured that the plea was knowingly and voluntarily entered. But what else, so what other assurance could the judge have gotten? Because it seems to me otherwise anybody who has second thoughts or a change of heart can just 10 months later say, you know what? I didn't mean to plead guilty. I'd like a trial. Well, the difference here, Your Honor, and the government does point out there's a number of cases that have dealt with scenarios where that happens, where a defendant makes a bald statement as this court refers to them. But the point is that here, when the motion to withdraw the guilty plea was made, those aren't bald statements. Mr. Jimenez's claims — They completely contradict his statements under oath on the record, right? But they are supported by everything that led up to the plea. His claims that — of what happened at the May 26th conference, of their impact on him, about his attorney's ability to be prepared for trial, all that is reflected in the events that led up to the plea. So these are not bald statements. They're supported by what happened here. They're supported by the fact that he wasn't getting along with his lawyer and he wanted a trial faster than his lawyer wanted. That's about it. Well, he had the right to both a speedy trial and effective assistance at that trial. And what the record reflects — No, no. He doesn't get to choose when the trial is going to be. The judge gets to choose that. Yes. But there is a right to a speedy trial. Yes. And he was trying to pursue that right over — the only objections to that were coming from his own attorney. So it was that struggle that went on for months and led to the breakdown in their relationship. And then ultimately, when he had his trial date and the trial date was set, and he ran up against his own attorney yet again, this time unprepared to try it, that he felt — But all that was apparent at the time of the guilty plea, right? If the Court had considered perhaps all the surrounding circumstances leading up to there, perhaps the Court could have made this recognition. But our point is at least at the motion to withdraw the guilty plea stage, where it was all presented to the Court of what had occurred and the impact on the defendant, that is where the error lies, and that's why it was an abuse of discretion. Rule 11 permits withdrawal for a fair and just reason. And we maintain that the record shows there was one here. Are you appointed pursuant to the Criminal Justice Act? My colleague, Craig Stewart, had been before leaving Arnold and Porter, and we've continued this representation since then. Thank you. Thank you. Thanks. Rule reserved decision. Very well argued on both sides.